UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RONALD DAVID WRIGHT,                )
                                    )
Petitioner,                         )
                                    )
v.                                  )
                                    )    Case No. 4:14-CV-874-SPM
                                    )
                                    )
TROY STEELE,                        )
                                    )
Respondent.                         )

**MEMORANDUM AND ORDER**

This matter is before the undersigned on the petition of Missouri state prisoner Ronald

David Wright ("Petitioner" or "Wright") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

(Doc. 1). The parties have consented to the jurisdiction of the undersigned United States Magistrate

Judge pursuant to U.S. § 636(c)(1). (Doc. 8). For the following reasons, the petition is denied.

I.    **FACTUAL BACKGROUND**

The Missouri Court of Appeals summarized the facts as follows:

On October 16, 2008, at approximately 1:00 p.m., a witness observed
Wright sitting in his truck while parked across the street from John and Jean Shaw's
("the Shaws") house. The witness watched Wright drive around the subdivision,
stopping outside various houses and at a construction site. Eventually, Wright drove
through a field and backed his truck into the Shaws' driveway.
        The Shaws, a couple in their seventies, were at home watching television
when Wright knocked on their door. Mr. Shaw, who was in frail health and walked
with a cane, answered the door. Wright told Mr. Shaw that he was looking for
someone else and returned to his truck but did not leave the Shaws' driveway.
Feeling increasingly nervous about Wright's continued presence, Mrs. Shaw
gathered some tools, including a short-handled sledgehammer, and placed them on
a stool by the front door.
        Wright suddenly broke into the Shaws' home, threw Mr. Shaw to the floor,
and began punching him. Mrs. Shaw threw an ashtray at Wright, hitting him in the

arm. When Wright started moving toward Mrs. Shaw, she ran out the back door with a cordless phone, called the police, and hid in some brush.

When the police arrived, they found Mr. Shaw's body in the living room. His head appeared to be "smashed in" and there was blood on the floor and ceiling. Mr. Shaw's autopsy revealed that the cause of death was blunt trauma from an instrument to the head. The pathologist counted at least eight blows to Mr. Shaw's head, which were consistent with a sledgehammer as the cause of the blunt trauma.

Later that day at about 3:00 p.m., Jerald Wells ("Wells") was at his home when he heard his garage door close. Wells entered the garage and found Wright standing beside Wright's truck, which he had parked in Wells's garage. After Wells ordered Wright to leave, Wright returned to his truck and backed it out of the garage, but the truck stalled in the driveway. Wells watched Wright walk down the street, steal a truck belonging to Wells's neighbor, and drive the truck down a dead-end street. Wells drove his own truck after Wright and blocked Wright until the police arrived and arrested Wright.

The State of Missouri ("State") charged Wright with first-degree murder, armed criminal action, and first-degree burglary. The jury found Wright guilty of all counts. The trial court then sentenced Wright as a prior and persistent offender to consecutive sentences of life imprisonment without probation or parole for first-degree murder, 200 years' imprisonment for armed criminal action, and life imprisonment for first-degree burglary.

Resp't Ex. Q, at 4-6.

At trial, Petitioner testified that on the day of the crimes at issue, he was hearing voices that drew him to the Shaws' subdivision, and that while he was there, he was guided to go to different places by seeing flags and hearing voices. Resp't Ex. E, at 440-449. He ultimately went to the Shaws' residence because he thought a flag was pointing in that direction. *Id.* at 449-50. He testified that he did not remember why he attacked Mr. Shaw but that he did remember how he attacked him. *Id.* at 452-53. Petitioner testified that he attacked Mr. Shaw first with a hammer from his tool belt, and then with a sledgehammer. *Id.* at 453-56. He testified that when he saw the sledgehammer, he thought it was a "killing kit" and that they were "bad people," because "there was a license plate there, said, 'Alabam.'" *Id.* at 455. Petitioner testified that he heard an unfamiliar voice say, "God has delivered him into our hands." *Id.* at 456. Petitioner testified that after he realized what he was doing, he stopped. *Id.*

Evidence was also presented at trial regarding Plaintiff's actions before the murder. The day before the murder, while Petitioner was working at a construction site with his foreman, Michael Miller, he pushed Miller off the ladder, then started swearing and swinging at Miller until another worker stopped him. Resp't Ex. C, at 157-58, 160. Miller fired Petitioner and then called the police. *Id.* at 158. At the time of these events, Petitioner was on probation and parole. *Id.* at 164. At about 11:10 a.m. on the day of the murder, Petitioner's probation and parole officer called Petitioner and asked Petitioner to report to his office at 1:00 p.m. concerning alleged violations of his probation and parole conditions, including violation of laws. *Id.* at 164-66. Petitioner was concerned that he would be arrested, but the officer told him there had not been a warrant issued. *Id.* at 168-71, 176. Petitioner agreed to come in, but never showed up. *Id.* at 167.

Prior to trial, there was a dispute over whether Petitioner could offer evidence that he was incapable of the deliberation required for first-degree murder[1] because he was suffering from drug-induced psychosis at the time of the crimes. The Missouri Court of Appeals stated:

> Prior to trial, the State filed a motion to preclude testimony regarding whether Wright suffered from a mental disease or defect or diminished capacity. The motion noted that Wright had obtained a forensic evaluation from Dr. Scott, who offered the opinion that Wright suffered from an "amphetamine-induced psychotic disorder" that made him incapable of premeditation at the time of John Shaw's murder. The motion argued that "amphetamine-induced psychotic disorder" is not a mental disease or defect under controlling law but rather is intoxication or a drugged condition resulting from the voluntary ingestion of methamphetamine. Therefore, Dr. Scott's testimony is inadmissible. After hearing arguments, the trial court granted the State's motion during a pre-trial conference.
>
> In order to preserve for appellate review the issue of whether methamphetamine-induced psychosis is a mental disease or defect, trial counsel made an offer of proof with Dr. Scott during trial. Dr. Scott testified that he evaluated Wright to determine his mental state at the time of the attack on Mr. Shaw. Dr. Scott concluded that during the attack, Wright was suffering from a

---

[1] Under Missouri law, "A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." Mo. Rev. Stat. § 565.020.1. "Deliberation" means "cool reflection for any length of time no matter how brief." Mo. Rev. Stat. § 565.002(5).

methamphetamine-induced psychosis and as a result, he was not capable of cooly reflecting or premeditating upon his actions.

Resp't Ex. Q, at 8.

In addition to making an offer of proof with regard to Dr. Scott's evidence, Petitioner's trial counsel called Petitioner to the stand to make an offer of proof outside the presence of the jury. Resp't Ex. E, at 499. Petitioner stated that that he had used methamphetamine off and on since 1999 and was a chronic and heavy user. Resp't Ex. E, at 499-501, 504-05. He testified that he had voluntarily used methamphetamine the day before the murder, but not on the day of the murder. *Id.* at 499-500, 507, 511. He stated that prior to the date of the murder, he had experienced auditory hallucinations (hearing voices in his head) based on his methamphetamine use on five or six occasions. *Id.* at 501. He also stated that when he had those auditory hallucinations, it was customary for him to attach significance to signs, such as the flag he mentioned in his testimony. *Id.* at 501-02. Petitioner testified that incidents of hearing voices had occurred more in the past few years. *Id.* at 507. Petitioner also testified that he had been committed to the state hospital four times. *Id.* at 502.

Petitioner's trial counsel also made an offer of proof at the bench in which he stated that he anticipated that Petitioner's mother would testify that two days before the murder, Petitioner's mother saw him and saw that he was extremely depressed, that he was very distressed, that he had problems with anxiety, that he had shaved his head, and that she was extremely worried about his mental health. *Id.* at 497-98. The trial court ruled the testimony inadmissible. *Id.* at 498.

## II.    PROCEDURAL BACKGROUND

In his direct appeal, Petitioner argued that the trial court violated his right to due process and his right to a fair trial by excluding several pieces of evidence: (1) the testimony of psychiatrist Dr. Richard Scott (for the purpose of showing that Petitioner was suffering from a drug-induced

psychosis and was unable to form the intent required for first-degree murder); (2) his own testimony about his prior mental health history, which would have supported Petitioner's defense that he did not deliberate before killing the victim because he was suffering from a psychosis; and (3) Petitioner's mother's testimony about Petitioner's strange behavior two days prior to the charged crimes. Resp't Ex. K. The Missouri Court of Appeals affirmed the conviction, finding that under Section 562.076.3, Mo. Rev. Stat., as interpreted by Missouri courts, evidence of drug-induced psychosis is not admissible to show the absence of a mental state that is an element of the offense. Resp't Ex. M, at 8-14. The Missouri Court of Appeals also specifically rejected Petitioner's contention that the statute was unconstitutional. *Id.* at 13-14.

In Petitioner's amended motion for post-conviction relief, filed through counsel, Petitioner asserted three claims: (1) that his trial counsel was ineffective because he failed to assure that his expert, Dr. Richard Scott, understood that under Missouri law, methamphetamine-induced psychosis is not a basis for challenging the mental state of murder in the first degree, leaving Petitioner without any reasonable trial strategy when Dr. Scott's opinions were excluded; (2) that his trial counsel was ineffective based on his failure to present testimony about Petitioner's drug-induced psychosis (from witnesses William Wright, Dale Wright, Carole Jenson, Joan Bohn, Linda Capone, Dr. Rick Scott, and Doug Thurston) as an explanation for Petitioner's actions before and after the crimes; and (3) that his trial counsel was ineffective based on his failure to object to the state's improper closing argument. Resp't Ex. N, at 23-26. The motion court rejected each claim on its merits. Resp't Ex. N, at 44-52. Petitioner raised the same three claims in his appeal from the denial of his motion for post-conviction relief. Resp't Ex. O, at 13-16. The Missouri Court of Appeals affirmed the motion court's denial of all three claims. Resp't Ex. Q.

In the instant petition, Petitioner asserts three grounds for relief:[2] (1) that his trial counsel was ineffective because he failed to introduce testimony from expert Dr. Richard Scott that Petitioner was in a methamphetamine-induced psychosis to challenge the State's theory of prosecution, theory of motive and the inference of consciousness of guilt, and failed to present the testimony of several witnesses to corroborate Dr. Scott's conclusions; (2) that his trial counsel was ineffective because he failed to call several witnesses to testify about Petitioner's reputation for mental instability, which would have corroborated Petitioner's testimony about hearing voices on the day of the crimes; and (3) that his trial counsel was ineffective because he failed to submit the State's case to meaningful adversarial testing.

## III. LEGAL STANDARDS

### A. Legal Standard for Reviewing Claims Adjudicated on the Merits in State Court

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by the AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant habeas relief to a state prisoner with

---

[2] There is some confusion in the briefing regarding the specific nature of Petitioner's claims. In the petition, Petitioner described only three grounds for relief, though within each ground it appeared that Petitioner might be asserting multiple claims. In his response, Respondent identified eight grounds that Respondent believed were asserted in the petition. In his reply, Petitioner strenuously objected to Respondent's characterizations of his claims, and he attempted to provide clarification regarding the nature of the three claims he was actually asserting. The Court will address the three claims as asserted in the petition and as clarified in the reply.

respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

In the instant case, each of Petitioner's claims is based on an assertion that his counsel was ineffective. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of

counsel, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.*at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To demonstrate prejudice, a Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance," *Bell*, 535 U.S. at 698-99. "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id*. at 699.

**B. Procedural Default**

To preserve a claim for federal habeas review, "a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *accord Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

**IV. DISCUSSION**

**A. Ground One: Ineffective Assistance of Counsel—Failure to Introduce Evidence From Dr. Richard Scott and Other Witnesses Regarding Petitioner's Drug-Induced Psychosis to Challenge State's Theory of Prosecution, Theory of Motive, and Inference of Consciousness of Guilt**

In Ground One, Petitioner argues that his trial counsel was ineffective because he failed to introduce testimony from expert Dr. Richard Scott "that Petitioner was in a methamphetamine-

induced psychosis to challenge the State's theory of prosecution, theory of motive and the inference of consciousness of guilt" and failed to present the testimony of witnesses (William Wright, Dale Wright, Bernice Wright, Carole Jenson, Joan Bohn, Linda Capone, Doug Thurston, Deputy Jacob Hatching, and Deputy R. Thieret) to corroborate Dr. Scott's conclusions. Pet'n, Doc. 1, at 18.[3] Petitioner acknowledges that trial counsel attempted to have this evidence admitted to show that he did not have the mental state required to commit the crimes at issue, and he does not challenge the findings of the trial court and the Missouri Court of Appeals that the evidence was not admissible for that purpose under Missouri law. *Id.* at 18, 20. However, Petitioner argues that the evidence was admissible "on the issue of conduct" and that his trial counsel should have tried to have it admitted for that purpose. *Id.* at 20. Petitioner argues that the state's theory was as follows: In the days prior to the homicide, Petitioner committed assault, and his parole officer found out. Petitioner feared that if he reported in, he would be sent back to prison; thus, Petitioner decided to go on the run and attempt to find things of value to steal. Petitioner went to the area of the homicide for the purpose of "casing" the homes to burglarize, went to the victims' home, went through the wife's purse and moved her checkbooks, went to another garage after the homicide to hide and possibly commit a burglary, and then stole a truck from someone else. *Id.* at 19. Petitioner argues that evidence that he was in a methamphetamine-induced psychosis on the day of the homicides would have shown that this conduct was being guided by the psychosis, and would have "destroyed the State's theory of prosecution, theory of motive, and consciousness of guilt evidence." *Id.* at 21. Petitioner also argues that this evidence would have undermined the state's argument that Petitioner's trial testimony was "unsupported malarkey" and "The Big Lie." *Id.*

---

[3] For documents that were electronically filed in this case, page numbers refer to the page numbers in the electronically filed document.

Petitioner argues that Ground One was not presented to the state courts and has therefore been procedurally defaulted.[4] He argues that the Court should nonetheless consider the claim, because the Court should find cause and prejudice based on the ineffectiveness of his post-conviction counsel for failing to raise it. Upon review of the record, however, it is apparent that Petitioner *did* raise this claim in his state court post-conviction proceedings. Ground One is in substance identical to the second claim of Petitioner's amended motion for post-conviction relief. In Claim 8(b) of his motion for post-conviction relief, Petitioner stated:

> [T]rial counsel failed to perform as reasonably competent counsel would under similar circumstances by failing to present testimony about Ronald's drug-induced psychosis which would have explained his actions before and after the crimes. Counsel failed to investigate and call to the stand William Wright, Dale Wright, Carole Jenson, Joan Bohn, Linda Capone, Dr. Rick Scott, and Doug Thurston to testify in Ronald's defense. Had defense counsel used their testimony to support the reasonable trial strategy that drug induced psychosis was relevant to explain other conduct, the court would have allowed the jury to hear the evidence. Movant was prejudiced because the defense did not explain that Ronald's psychotic behavior caused the conduct used by the state as consciousness of guilt and as lack of credibility of Movant as a witness. The jury believed that Ronald was a liar as the state argued and therefore found him guilty of murder in the first degree.

Resp't Ex. N, at 25-26. Petitioner further stated:

> The state's theory throughout the trial was that Ronald was running from his parole officer and killed the victim in a burglary to get money for his escape. Reasonably competent trial counsel would have known that Missouri case-law allows intoxication testimony to be admitted for the purpose of rebutting this type of inference. *State v. Hefflinger*, 101 S.W.3d 296, 301 (Mo. App. E.D. 2003) lists the reasons a defendant can raise intoxication evidence when it is not allowable to counter intent. Intoxication evidence can be used to counter inferences of guilt the state may submit to the jury; failure to act; consciousness of guilt, desire or disposition to conceal the crime, failure to alert the police, destruction, suppression or fabrication of evidence and flight. Because this court has intimate knowledge of the holding, the evidence would have been allowed. *Id.* 296. Intoxication evidence is also relevant to countering the state's claims that the defendant is not credible. *See State v. Taylor*, 929 S.W.2d 926 (Mo. App. S.D. 1996) and *State v. Ford*, 639 S.W.2d 573 (Mo. 1982). Additionally, § 562.076.3 provides that a person's

---

[4] Because it appears that Respondent mischaracterized this claim in his Response, it is unclear whether Respondent believes that this claim, properly described, has been procedurally defaulted.

voluntarily drugged condition may be admissible when otherwise relevant to issues of conduct.

Resp't Ex. N, at 33-34. Petitioner went on to explain that he was prejudiced by his trial counsel's failure, because it allowed the state to "cast [his] actions before and after the crime in a guilty light" and did not allow him to show that those actions were the result of his drug use. For example, he argued that his trial counsel's failure allowed the state to argue that the reason he was driving erratically up and down the street was to case it for burglaries and the reason he came to the Shaws' door to ask for an unknown person was that he was trying to burglarize the home. *Id.* at 34-35.

Petitioner argues that his claim in Ground One is different from the claim he presented to the state court, pointing to minor differences in the wording of the descriptions of the two claims. Reply, Doc. 13, at 7-10. Those differences are not meaningful. Although the specific words used are not identical, the essential argument is the same: that Petitioner's trial counsel should have introduced the testimony of Dr. Ronald Scott and other witnesses to show that Plaintiff's actions before and after the crimes were the result of drug-induced psychosis, rather than (as the state contended) a result of his desire to avoid his parole officers, his plan to commit burglaries, and/or his consciousness of guilt. The state court adjudicated this claim on the merits, and the Court must review the state court's determination using AEDPA's deferential standards. As discussed above, the Court will examine whether the state court applied *Strickland* to the facts of Petitioner's case in an objectively unreasonable manner.

In evaluating this claim, the motion court reviewed at length the evidence that had been presented at trial, including the evidence of Petitioner's conduct both before the attack and during the attack. Resp't Ex. N, at 48-50. The court found that evidence of voluntary intoxication and drug-induced psychosis was not admissible under Missouri law to explain Petitioner's conduct

before or during the attack, and thus that trial counsel was not ineffective for not seeking its

admission. Resp't Ex. N, at 46-50 (citing *State v. Hefflinger*, 101 S.W.3d 296 (Mo. Ct. App. 2002),

and *State v. Roberts*, 948 S.W.2d 577 (Mo. 1997)). The motion court found that under Missouri

law, the only possible legal basis for the admission of intoxication evidence was to refute

inferences of consciousness of guilt from Petitioner's conduct after the attack. Resp't Ex. N, at 50.

The motion court reviewed that evidence and found that it was a very small aspect of the case. *Id.*

at 50-51. The motion court found that Petitioner could not show either ineffectiveness or prejudice

based on trial counsel's decision not to introduce previous uncharged bad acts of Petitioner (his

methamphetamine use) "for the dubious purpose of refuting a very minor aspect of the

prosecution's case." *Id.* at 51.

> In affirming the motion court's denial of this claim, the Missouri Court of Appeals stated:

> > Our review of the record reveals that Wright's amended Rule 29.15 motion failed to allege facts demonstrating that his trial counsel was ineffective for failing to investigate and call witnesses to testify about his drug-induced psychosis. Wright's amended motion did not allege that these witnesses could be located through reasonable investigation, nor did it allege that the witnesses would have testified if called.
> > In addition, Wright has also failed to demonstrate that he was prejudiced by trial counsel's failure to investigate and call these witnesses. At trial, Wright admitted to killing Mr. Shaw. Therefore, the only issue for the jury to decide was whether Wright killed Shaw after deliberation upon the matter—the requisite mental state for first-degree murder. The motion court found that the majority of the State's evidence on the issue of deliberation related to Wright's conduct before and during the attack on Mr. Shaw, including evidence of the time necessary to carry out the attack and the infliction of at least eight blows to Mr. Shaw's head with a sledgehammer. Wright's post-crime conduct of erratic driving and abandoning his car was a very small aspect of the State's case. Had the trial court allowed admission of Wright's evidence of drug-induced psychosis, the evidence would have only been admitted for the very limited purpose of refuting the inferences of consciousness of guilt from Wright's flight and efforts at concealment after Mr. Shaw's death. Based on the foregoing, the motion court concluded that Wright was not prejudiced by trial counsel's failure to introduce evidence of his drug-induced psychosis.
> > We agree with the motion court and find no prejudice from trial counsel's failure to introduce evidence of Wright's drugged condition for the very limited

> purpose of refuting the State's inference of consciousness of guilt. Given that the
> majority of the State's evidence on the issue of deliberation related to Wright's
> conduct before and during the attack on Mr. Shaw, we are not persuaded that
> evidence refuting the State's inference of a guilty mind after the attack would have
> resulted in Wright's acquittal. The motion court's finding is not clearly erroneous.

Resp't Ex. Q, at 10-11 (footnote and citations omitted). The Court of Appeals also noted that

Petitioner "could not have used evidence of his drugged condition to explain his conduct before

and during the attack on Mr. Shaw." *Id.* at n.5.

The state courts' denial of this claim did not represent an objectively unreasonable

application of *Strickland* to the facts of this case. To the extent that Petitioner argues that this

evidence should have been offered to explain Petitioner's conduct before and during the attack (to

undermine the prosecution's theory that he was avoiding his parole officers, going on the run, and

planning burglaries), the state courts' finding of no deficient performance and no prejudice was

based on their determination that that the evidence would not have been admissible under Missouri

law. This Court cannot second-guess the decision of the state court on a matter of state law.

*See Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012) ("We do not second-guess the

decision of a Missouri state court on Missouri law."); *see also Estelle v. McGuire*, 502 U.S. 62,

67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state law questions."). In light of the Missouri courts' determination that this

evidence was inadmissible under Missouri law, it was reasonable for the state courts to find that

trial counsel did not show deficient performance by not seeking its admission, and that Petitioner

was not prejudiced under *Strickland* by his trial counsel's failure to seek its admission. To the

extent that Petitioner argues that this evidence should have been offered to explain Petitioner's

conduct after the attack (to undermine the prosecution's theory that that conduct showed

consciousness of guilt), the Missouri Court of Appeals reasonably found that Petitioner could not

show prejudice under *Strickland*, because the evidence of Petitioner's post-attack conduct was a very small part of the case. That finding is supported by the record, which shows that the bulk of the evidence relevant to deliberation related to Petitioner's conduct before and during the attack. That included evidence that Petitioner assaulted someone, skipped a meeting with his parole officer, drove around the Shaws' subdivision stopping outside various houses, backed his truck into the Shaws' driveway, knocked on Mr. Shaw's door and talked to Mr. Shaw, went back to his pickup truck in the Shaws' driveway, returned to the Shaws' house and broke in, threw Mr. Shaw on the ground, began punching him, started moving toward Mrs. Shaw, stopped and returned to Mr. Shaw, and ultimately killed him using eight blows from an instrument to the head. Resp't Ex. C, at 154, 157-58, 160, 165-71, 176; Resp't Ex. E, at 451-56; Resp't Ex. Q at 4-5.

Petitioner points out that in its prejudice analysis, the Missouri Court of Appeals stated that Petitioner could not show that he would have been "acquitted," whereas *Strickland* requires only that he show a reasonable probability that the outcome of the proceeding would have been different. He points out that there were lesser included offense instructions given and that even if he might not have been acquitted, he might have been convicted of a lesser offense. The undersigned finds no error. A reading of the entire sentence at issue shows that the Missouri Court of Appeals was clearly addressing the likelihood that the jury's finding regarding deliberation would have been different, and thus whether Petitioner would have been acquitted of the first-degree murder charge. It stated, "Given that the majority of the State's evidence on the issue of deliberation related to Wright's conduct before and during the attack on Mr. Shaw, we are not persuaded that evidence refuting the State's inference of a guilty mind after the attack would have resulted in Wright's acquittal." Resp't Ex. Q, at 11. The court was plainly addressing the question of whether the evidence not admitted would have affected the jury's decision on the issue of

deliberation, not whether it would have affected the jury's decision about whether Petitioner had committed any crime at all.

For all of the above reasons, Ground One is denied.

### B. Ground Two: Ineffective Assistance of Counsel Based on Failure to Call Witnesses to Show Petitioner's General Reputation for Mental Instability

In Ground Two, Petitioner asserts that his trial counsel was ineffective because he failed to call as witnesses Bernice Wright, William Wright, Dale Wright, Carole Jenson, Joan Bohn, Linda Capone, Doug Thurston, and Lisa Morris to introduce character evidence to corroborate Petitioner's testimony. Pet'n, Doc. 1, at 24. Petitioner argues that these witnesses had personal knowledge of Petitioner's mental instability and strange behavior and that he had a reputation of being mentally unstable in the community. Petitioner argues that this testimony would have made more believable Petitioner's own testimony that he was hearing voices.

As Petitioner acknowledges, this claim is procedurally defaulted based on Petitioner's failure to properly present the claim in his post-conviction proceedings. *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006) (claims of ineffective assistance of counsel not presented in motion for post-conviction relief or appeal to the Missouri Court of Appeals are procedurally defaulted). As discussed above, a state prisoner can overcome such a procedural default only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner does not provide any argument for applying the fundamental miscarriage of justice exception here. However, he asserts that cause for the default exists under *Martinez v. Ryan*, 566 U.S. 1 (2012). In *Martinez*, the Supreme Court has recognized that a defaulted claim of ineffective assistance of trial counsel may be excused if the default was due to ineffective assistance of post-conviction relief counsel. *Id.* at 17. To overcome his

procedural default under *Martinez*, Petitioner must show (1) that post-conviction counsel was "ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)," and (2) "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 13. The second prong is evaluated by determining whether Petitioner has made a substantial case of ineffective assistance of trial counsel under the *Strickland v. Washington* standards. *See Dansby v. Hobbs*, 766 F.3d 809, 834-36 (8th Cir. 2014); *Sund v. Young*, No. 5:14–CV–05070–KES, 2015 WL 4249405, at *4-*5 (D.S.D. July 13, 2015). As discussed above, to show ineffective assistance of counsel under *Strickland*, Petitioner must show that (1) "[his] counsel's performance was deficient," and (2) "the deficient performance prejudiced [his] defense." 466 U.S. at 687.

With regard to the first *Martinez* prong, Petitioner cannot establish that his post-conviction relief counsel was ineffective under *Strickland* for failing to include this ineffective assistance claim in the amended motion for post-conviction relief. The Eighth Circuit has explained:

> When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims. Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006) (quotation marks and citations omitted). *See also Smith v. Robbins*, 528 U.S. 259, 288 (2000) (noting its prior holding that "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal"). The same logic applies to claims of ineffective assistance of post-conviction relief counsel. Here, Petitioner's post-conviction relief counsel pursued three claims of ineffective assistance of counsel in the

amended motion for post-conviction relief, including a claim very closely related to this one: that Petitioner's trial counsel was ineffective based on his failure to present testimony about Petitioner's drug-induced psychosis from several of these same witnesses to explain Petitioner's actions before and after the crimes. It appears that Petitioner's post-conviction counsel made a reasonable decision that the claims presented were the most meritorious claims. Moreover, as discussed below, the omitted ineffective assistance claim was of little merit and is not clearly stronger than the ones presented.

With regard to the second *Martinez* prong, Petitioner cannot establish that the underlying ineffective assistance of trial counsel claim was a substantial one. As discussed above, the Missouri Court of Appeals found without merit the very closely related claim that trial counsel was ineffective for failing to introduce testimony from these witnesses about Petitioner's drug-induced psychosis for purposes of explaining his conduct before and after the attack. It found that under Missouri law, evidence that Petitioner suffered from a drug-induced psychosis was not admissible for purposes of explaining Petitioner's actions before and during the attack. It also found that there was no reasonable probability that evidence that Petitioner suffered from a drug-induced psychosis to explain Petitioner's actions after the attack would have had an effect on the outcome of the trial. The same analysis applies to the instant claim. The evidence in the record shows that Petitioner's "mental instability" was caused by his drug use and drug-induced psychosis, and Petitioner offers no basis for a finding that any "reputation" for "mental instability" that these witnesses might testify about was caused by anything other than Plaintiff's drug use and drug-induced psychosis. Seeking to admit evidence of Petitioner's mental instability from these sources would have simply been another way of seeking to admit evidence that Plaintiff suffered from a drug-induced psychosis. Petitioner offers no reason why the Missouri Court of Appeals would have treated the

admissibility of this "reputation" evidence any differently than it treated the admissibility of other evidence of drug-induced psychosis. Petitioner also offers no reason why this "reputation" evidence would have been more likely to affect the outcome than would the evidence of drug-induced psychosis that was considered by the Missouri Court of Appeals. To the contrary, this lay reputation evidence would likely have been less persuasive with regard to Plaintiff's mental state than the evidence from Dr. Scott would have been. The Court finds that the Missouri courts would have rejected this claim for the same reasons they rejected the claim that was presented to them, and that it is without merit.

For the above reasons, Petitioner cannot establish cause or prejudice to excuse the procedural default of Ground Two, and thus Ground Two is denied.

### C. Ground Three: Ineffective Assistance of Counsel Based on Failure to Submit the State's Case to Meaningful Adversarial Testing

In Ground Three, Petitioner asserts that his trial counsel was ineffective in that he failed to submit the State's case to meaningful adversarial testing, and he describes several alleged errors by counsel to support his claim. Pet'n, Doc. 1, at 29-31. In his response, Respondent attempts to break up this claim into several individual claims of counsel error and one claim of cumulative error. In his reply, Petitioner clarifies that he is *not* asserting the individual claims described by Respondent, but is instead claiming that counsel was ineffective based on his trial counsel's failure to submit the state's case to meaningful adversarial testing under *United States v. Cronic*, 466 U.S. 648, 659 (1984). Reply, Doc. 13, at 19-21.

As Petitioner acknowledges, this claim is procedurally defaulted based on Petitioner's failure to properly present the claim in his post-conviction proceedings. As with Ground Two, Petitioner asserts that cause for the default exists under *Martinez*, 566 U.S. 1. Petitioner cannot

establish either prong of *Martinez* here, because this claim is completely without merit and Petitioner's post-conviction counsel was not ineffective for not raising it.

In *Cronic*, the United States Supreme Court held that there are certain situations involving the right to counsel that are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658-59. The Supreme Court found that the court may presume prejudice "if the accused is denied counsel at a critical stage of his trial," if counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," or if "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.* at 659. The Supreme Court later stated, "When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete." *Bell,* 535 U.S. 685, at 696-97. The failure must occur "throughout the . . . proceeding as a whole," rather than merely "at specific points." *Id.* at 697. When attorney error at specific points is alleged, *Strickland* provides the appropriate framework for analysis, not *Cronic*. *Id.*

Petitioner does not argue that his trial counsel was totally absent during any stage of the trial or that his trial counsel was prevented from assisting the accused during a critical stage of the proceedings. Petitioner suggests that his trial counsel entirely failed to subject the prosecution's case to meaningful adversarial testing. However, the evidence in the record is to the contrary. A review of the record shows that Petitioner's trial counsel actively advocated on Petitioner's behalf before and during the trial, offering relevant evidence, making offers of proof where appropriate, and making appropriate objections and arguments. Indeed, several of the arguments Petitioner makes in support of Ground Three show that his trial counsel was actively attempting to subject

the state's case to meaningful adversarial testing. Petitioner takes issue with the particular ways in which his trial counsel should have argued and handled the question of evidence of his drug-induced mental state (as addressed in Grounds One and Two). However, it is undisputed that his trial counsel repeatedly attempted to have such evidence admitted, and even made several offers of proof to preserve the issue for appeal. Petitioner's trial counsel also offered Petitioner's own testimony that his actions on the day in question were guided by hearing voices. In further support of Ground Three, Petitioner points to his trial counsel's handling of photographs showing that the victim's purse and checks were still at the scene after the murder. Trial counsel apparently offered the photographs for the purpose of disputing the State's theory that Petitioner had gone to the home with the intent of stealing things of value, because they showed that Petitioner had left those valuable items in the home. Resp't Ex. D, at 240-44. However, on redirect by the prosecution, Mrs. Shaw testified that she had not placed the checkbook and purse in the location shown in the photos. Petitioner argues that because his trial counsel failed to interview the witness before offering this evidence, the State ended up introducing testimony that ultimately supported the State's theory by suggesting that Petitioner had gone through these items looking for something to steal. Even assuming that Petitioner is correct that counsel was unwise in offering this evidence, this does not come close to suggesting that Petitioner's trial counsel was not subjecting the state's case to meaningful adversarial testing. To the contrary, Petitioner's trial counsel was actively attempting to test the state's case by introducing evidence that trial counsel reasonably believed to be contrary to that case. Petitioner also takes issue with Petitioner's trial counsel's decision to mention his "confession" to the police during the opening statement. That, however, is a contention of error at a specific point in the trial, rather than a contention that Petitioner's trial counsel failed

to test the prosecution's case throughout the proceeding, and cannot form the basis for a claim under *Cronic*.

For all of the above reasons, Petitioner cannot show that his trial counsel failed to subject the prosecution's case to meaningful adversarial testing, and his claim under *Cronic* is without merit.

The Court also notes that to the extent that this is a claim based on the cumulative effect of multiple counsel errors, it is not cognizable under Eighth Circuit law. In *Middleton v. Roper*, 455 F.3d 838 (8th Cir. 2006), the court stated:

> We repeatedly have recognized "a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." *Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir. 2002) (citation omitted); *see, e.g.*, *United States v. Robinson*, 301 F.3d 923, 925 n. 3 (8th Cir. 2002) (recognizing "the numerosity of the alleged deficiencies does not demonstrate by itself the necessity for habeas relief," and noting the Eighth Circuit's rejection of cumulative error doctrine); *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation." (citation omitted)); *Scott v. Jones*, 915 F.2d 1188, 1191 (8th Cir. 1990) (holding "cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own" (citation omitted)). Therefore, we have no hesitancy in rejecting Middleton's argument and concluding the cumulative effect of alleged trial counsel errors is not grounds for granting habeas relief.

*Id.* at 851. *See also Shelton v. Maples*, 821 F.3d 941, 951 (8th Cir. 2016) ("Habeas relief will not be granted based on the cumulative effect of attorney errors.").

For all of the above reasons, Petitioner is not entitled to relief on Ground Three, and Ground Three is denied.

## V.    CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of

appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the Petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that reasonable jurists could not differ on Petitioner's claims, so the Court will not issue a certificate of appealability. Accordingly,

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Ronald David Wright's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of September, 2017.